UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DARREN DEON JOHNSON,

        Plaintiff,                    Case No. 1:20-cv-687

v.                                      Honorable Janet T. Neff

B. DIXON-INGALLS et al.,

        Defendants.
_____/

## OPINION DENYING LEAVE
## TO PROCEED *IN FORMA PAUPERIS* - THREE STRIKES

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff sought leave to proceed *in forma pauperis*, and his request initially was granted. (ECF No. 7.) However, because Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious or for failure to state a claim, he is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g). The Court therefore will vacate its July 28, 2020, order granting pauper status and direct Plaintiff to pay the $400.00 civil action filing fee applicable to those not permitted to proceed *in forma pauperis*. This fee must be paid within twenty-eight (28) days of this opinion and accompanying order. If Plaintiff fails to pay the fee, the Court will order that this case be dismissed without prejudice. Even if the case is dismissed, Plaintiff must pay the $400.00 filing fee in accordance with *In re Alea*, 286 F.3d 378, 380-81 (6th Cir. 2002).

### Discussion

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which was enacted on April 26, 1996, amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*. As the Sixth Circuit has stated, the

PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners–many of which are meritless–and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). For that reason, Congress created economic incentives to prompt a prisoner to "stop and think" before filing a complaint. *Id.* For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b). The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit. *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits. Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The statutory restriction "[i]n no event," found in § 1915(g), is express and unequivocal. The statute does allow an exception for a prisoner who is "under imminent danger of serious physical injury." The Sixth Circuit has upheld the constitutionality of the three-strikes rule against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation. *Wilson v. Yaklich*, 148 F.3d 596, 604-06 (6th Cir. 1998).

Plaintiff has been an active litigant in the federal courts in Michigan. In three of Plaintiff's lawsuits, the Court entered dismissals on the grounds that the cases were frivolous, malicious, and/or failed to state a claim. *See Johnson v. Quist*, No. 2:12-cv-11907 (E.D. Mich.

2

July 10, 2012); *Johnson v. Kuehne*, No. 2:12-cv-12878 (E.D. Mich. July 31, 2012); *Johnson v. Harrison*, No. 2:12-cv-12543 (E.D. Mich. Aug. 2, 2012). Plaintiff also has, on multiple occasions, been denied leave to proceed *in forma pauperis*, because he has accumulated three strikes. *Johnson v. Brown et al.*, No. 1:20-cv-434 (W.D. Mich. May 29, 2020); *Johnson v. Hoober et al.*, No. 1:18-cv-855 (W.D. Mich. Aug. 10, 2018); *Johnson v. Pallas et al.*, No. 1:17-cv-1016 (W.D. Mich. Dec. 5, 2017); *Johnson v. Miller*, No. 1:17-cv-884 (W.D. Mich. Oct. 24, 2017); *Johnson v. Mark*, No. 2:17-cv-10232 (E.D. Mich. Jan. 27, 2017); *Johnson v. Kinder*, No. 2:16-cv-12698 (E.D. Mich. Aug. 23, 2016); *Johnson v. Hulet*, No. 1:13-cv-837 (W.D. Mich. Aug. 15, 2013).

Moreover, Plaintiff's allegations do not fall within the "imminent danger" exception to the three-strikes rule. 28 U.S.C. § 1915(g). The Sixth Circuit set forth the following general requirements for a claim of imminent danger:

> In order to allege sufficiently imminent danger, we have held that "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (internal quotation marks omitted). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id*. at 797–98; *see also* [*Taylor v. First Med. Mgmt.*, 508 F. App'x 488, 492 (6th Cir. 2012)] ("Allegations of past dangers are insufficient to invoke the exception."); *Percival v. Gerth*, 443 F. App'x 944, 946 (6th Cir. 2011) ("Assertions of past danger will not satisfy the 'imminent danger' exception."); *cf*. [*Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007)] (implying that past danger is insufficient for the imminent-danger exception).
>
> In addition to a temporal requirement, we have explained that the allegations must be sufficient to allow a court to draw reasonable inferences that the danger exists. To that end, "district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are conclusory or ridiculous, or are clearly baseless (i.e. are fantastic or delusional and rise to the level of irrational or wholly incredible)." *Rittner*, 290 F. App'x at 798 (internal quotation marks and citations omitted); *see also Taylor*, 508 F. App'x at 492 ("Allegations that are conclusory, ridiculous, or clearly baseless are also insufficient for purposes of the imminent-danger exception.").

*Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580, 585 (6th Cir. 2013). A prisoner's claim of imminent danger is subject to the same notice pleading requirement as that which applies to

3

prisoner complaints. *Id.* Consequently, a prisoner must allege facts in the complaint from which the Court could reasonably conclude that the prisoner was under an existing danger at the time he filed his complaint, but the prisoner need not affirmatively prove those allegations. *Id.*

Plaintiff alleges that he suffers from back problems that cause him to suffer pain and may cause him to lose control of his legs and collapse on occasion. Plaintiff's back problems have been the subject of several of his prior lawsuits. Most relevantly, in *Johnson v. Brown et al.*, No. 1:20-cv-434 (W.D. Mich.), Plaintiff complained that, after a medical lay-in from his job in the bakery caused by a reinjury to his back, Defendant Food Director M. Brown moved Plaintiff from the bakery to the serving line to in an attempt to accommodate Plaintiff's limited ability to bend and lift. Plaintiff complained that standing in one place, as required by serving line work, was not feasible. Plaintiff indicated that he thought a position in "produce" might work. Brown told Plaintiff that he would offer him such a position if it came available. Plaintiff alleged that positions had come available, but Brown did not offer them to Plaintiff. Plaintiff also claimed that he complained to Defendant Facility Business Manager B. Dixon-Ingalls, who shortened Plaintiff's hours and limited him to a single shift, as requested by Food Service Director Brown, in order to accommodate Plaintiff's limitations. Plaintiff expressly alleged in Case No. 1:20-cv-434 that Defendant Dixon-Ingalls informed Plaintiff that Food Service Director Brown was responsible for determining the assignments of prisoners in food service and that Plaintiff should inform Brown of his medical restrictions so that Brown could accommodate those restrictions. (1:20-cv-434, ECF No. 1-1, PageID.7.) Finally, Plaintiff complained that Defendant Deputy Warden Stewart, as a superior to Brown and Dixon-Ingalls, could have ordered the other defendants to place Plaintiff in a position to accommodate his needs.

4

Under the circumstances of Case No. 1:20-cv-434, the Court concluded that Plaintiff's allegations did not support a finding that Plaintiff was in imminent danger of serious physical injury from the conduct of the Defendants. The Court noted that Plaintiff did not contend that he was being forced to work when he was physically unable to do so; rather, he complained that Defendants would not place him in the assigned job he wanted in "produce." The Court noted that Plaintiff did not allege that Defendants were in some way responsible for a failure to treat Plaintiff, or that they were are unwilling to accommodate Plaintiff's limitations. To the contrary, Plaintiff's allegations showed only that Plaintiff preferred different accommodations.

In the instant case, filed only two months after Case No. 1:20-cv-434, Plaintiff again sues Defendant Dixon-Ingalls, seeking a prison job that he believes would better accommodate his physical limitations. In his affidavit in support of the instant complaint, Plaintiff wholly fails to mention the fact that Dixon-Ingalls reduced his hours at the request of his manager and that Dixon-Ingalls informed him that she had no control over his assignment in food service. Although Plaintiff claims to be in imminent danger of serious physical injury, he does not allege either that Dixon-Ingalls has denied him medical care or has any authority over his medical care. Moreover, Plaintiff's prior allegations and attachments fail to demonstrate that Defendant Dixon-Ingalls has the authority either to move him into a different kitchen job or is interfering with his assignment to a different job by the food service director. Further, Plaintiff's only allegation against Defendant Barnes is that Barnes allegedly retaliated against him by denying his grievance about the issue. Such an allegation does not even support a claim against Defendant Barnes, *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (holding that denying a grievance does not create liability under § 1983), much less demonstrate that Defendant Barnes is placing Plaintiff in imminent danger of serious physical injury.

Because Defendants cannot provide him any relief that would alleviate his alleged serious risk of physical injury, Plaintiff is not in imminent danger from these Defendants. *See Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009) (seminal case, holding that there be some nexus between the imminent danger alleged by the prisoner and the legal claims asserted in his complaint); *Andrews v. Cervantes*, 493 F.3d 1047, 1053-54 (9th Cir. 2007); *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003); *Day v. Maynard*, 200 F.3d 665, 667 (10th Cir. 1999) (holding that a prisoner does not meet the imminent-danger exception when he is no longer facing risk from the defendants he sues, because he has since been transferred to a different prison); *see also Ball v. Hummel*, 577 F. App'x 96, 96 n.1 (3d Cir. 2014) (citing *Pettus*); *Chavis v. Chappius*, 618 F.3d 162, 171 (2nd Cir. 2010) (citing *Pettus* and requiring a nexus between the claims alleged and the asserted imminent danger).

Although the Sixth Circuit has not yet specifically addressed the nexus issue, *see Vandiver*, 727 F.3d at 588 (declining to reach issue), this Court concurs with the five circuits that have recognized a nexus rule in order to protect the meaning of the entire provision. As the *Pettus* court reasoned, a reading of the statute that incorporates a nexus rule is consistent with the fundamental rule of statutory construction requiring that a statute be read as a whole. 554 F.3d at 297. The rule of construction has been regularly repeated by the Supreme Court: "The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context. . . . It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132-33 (2000) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)), *quoted in Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 666 (2007).

As applied to § 1915(g), the exception must be read in light of the strong general thrust of the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which was "aimed at the skyrocketing numbers of claims filed by prisoners–many of which are meritless–and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). In addition, § 1915(g) itself states that "*[i]n no event* shall a prisoner bring a civil action or appeal . . ." if he has three strikes, unless his complaint alleges facts that fall within the narrow exception in issue. 28 U.S.C. § 1915(g) (emphasis added); *Pettus*, 554 U.S. at 297. Interpreting the statute without some link between the imminent danger alleged and the redress sought, would cause the exception to swallow the rule, permitting a prisoner to file as many lawsuits as he wishes on any subject—as long as he can state that he is in imminent danger from something, even something unrelated to the action he brings. Such a reading also is inconsistent with the general rule of statutory construction, which requires that exceptions to a rule be read narrowly, so as not to undermine the general rule. *See* 2A Norman J. Singer, *Statutes and Statutory Construction*, § 47.11 at 250–51 (6th ed. 2000) ("[W]here a general provision in a statute has certain limited exceptions, all doubts should be resolved in favor of the general provision rather than exceptions."). Because Plaintiff's allegations concerning ostensibly "imminent" dangers are incapable of redress in the instant case against the instant Defendants, Plaintiff cannot demonstrate the requisite nexus.

For these reasons, § 1915(g) prohibits Plaintiff from proceeding *in forma pauperis* in this action. The Court therefore will vacate its July 28, 2020, order granting pauper status (ECF No. 7). The Court also will direct that Plaintiff, within twenty-eight (28) days from the date of entry of this order, shall pay the entire civil action filing fee, which is $400.00. When Plaintiff pays his filing fee, the Court will screen his complaint as required by 28 U.S.C. § 1915A and 42

U.S.C. § 1997e(c).  If Plaintiff does not pay the filing fee within the 28-day period, this case will be dismissed without prejudice, but Plaintiff will continue to be responsible for payment of the $400.00 filing fee.  An order consistent with this opinion shall issue.


Dated:   September 3, 2020              /s/ Janet T. Neff
                                                            Janet T. Neff
                                                            United States District Judge


**SEND REMITTANCES TO THE FOLLOWING ADDRESS**:

Clerk, U.S. District Court
399 Federal Bldg.
110 Michigan St., N.W.
Grand Rapids, MI 49503

**All checks or other forms of payment shall be payable to "Clerk, U.S. District Court."**